STATE of Wisconsin,
Plaintiff-Respondent,

v.

Jon Anthony SOTO,
Defendant-Appellant.

Supreme Court

*No. 2010AP2273–CR. Oral argument November 8, 2011.
—Decided July 12, 2012.*

2012 WI 93

(Also reported in 817 N.W.2d 848.)

43

For the defendant-appellant, there were briefs and oral argument by *Chandra N. Harvey,* assistant state public defender.

For the plaintiff-respondent, the cause was argued by *Maura F.J. Whelan,* assistant attorney general, with whom on the brief was *J.B. Van Hollen,* attorney general.

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This case is before us on certification from the court of appeals, pursuant to Wis. Stat. § 809.61 (2009–10).[1] The court of appeals certified questions of statutory interpretation from the appeal of the decision of the circuit court for Trempealeau County[2] that denied Jon Anthony Soto's postsentencing motion to withdraw his guilty plea. Soto contends that his right under Wis. Stat. § 971.04(1)(g) to be present in the same courtroom as the presiding judge at his plea hearing was violated when the court conducted the hearing via videoconferencing technology.[3] The State contends that if Soto had a right to be present in the same courtroom as the presiding judge, he waived it prior to pleading.

¶ 2. We conclude that Wis. Stat. § 971.04(1)(g) provides a criminal defendant the statutory right to be in the same courtroom as the presiding judge when a plea hearing is held, if the court accepts the plea and pronounces judgment. However, we also conclude that this statutory right may be waived and that Soto waived it prior to pleading and the court's pronouncement of judgment. We so conclude because Soto appeared in a

---

[1] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

[2] The Honorable Thomas E. Lister presided.

[3] Different sources abbreviate the process of videoconferencing as "VCT" or "VTC," presumably meaning "videoconference technology" and "video teleconference," respectively. Wisconsin Stat. §§ 885.50–.64 use the term "videoconferencing technology" to refer to the process of communicating using "interactive technology that sends video, voice, and data signals over a transmission circuit so that two or more individuals or groups can communicate with each other simultaneously using video monitors." Wis. Stat. § 885.52(3). In accordance with the statutes' terminology, we use the term "videoconferencing."

48

courtroom in the Trempealeau County courthouse; both his attorney and the prosecuting attorney also appeared in the same courtroom; through videoconferencing, the judge was able to see, speak to and hear Soto and Soto was able to see, speak to and hear the circuit court judge; the judge explained that videoconferencing would be used for the plea hearing if Soto chose to enter a plea that day; and Soto expressly consented to the use of videoconferencing for the plea hearing. Accordingly, we affirm the circuit court's order denying Soto's motion to withdraw his guilty plea.

## I. BACKGROUND

¶ 3. The facts relevant to Soto's appeal are limited primarily to the circumstances surrounding the hearing at which he pled guilty to second-degree reckless endangerment with the use of a dangerous weapon through the use of videoconferencing. We, therefore, summarize the underlying charges and proceedings only briefly.

¶ 4. On April 14, 2009, a criminal complaint was filed in Trempealeau County against defendant Soto for numerous harms Soto allegedly perpetrated upon a former girlfriend. The complaint included one count of stalking resulting in bodily harm, one count of false imprisonment, two counts of aggravated battery and one count of second-degree reckless endangerment. All of these counts included sentence enhancements for the use of a dangerous weapon, domestic abuse and commission by a repeater. These charges were subsequently incorporated into the information filed against Soto on May 4, 2009. The information also included charges for first-degree sexual assault and attempted first-degree sexual assault, both of which included repeater enhancements.

¶ 5. On July 7, 2009, Soto, with the advice of counsel, entered into a plea agreement with the Trempealeau County District Attorney. That same day, Soto completed the plea questionnaire and waiver of rights form, expressly waiving those constitutional rights relating to a defendant's right to a trial in a criminal proceeding. According to the agreement, Soto would plead guilty to second-degree recklessly endangering safety, under Wis. Stat. § 941.30(2), with the repeater enhancement removed, but with the dangerous weapon and domestic abuse enhancements included. In exchange, the State agreed to dismiss and read-in the false imprisonment and aggravated battery charges with their enhancements. Additionally, the State agreed to dismiss the stalking, first-degree sexual assault and attempted sexual assault charges.

¶ 6. The following day, July 8, 2009, the parties appeared in a courtroom at the Trempealeau County courthouse for a scheduled plea hearing. Soto appeared with his attorney, James Kroner, and the State appeared by Trempealeau County District Attorney, Jeri Marsolek. The Honorable Thomas E. Lister presided from the Jackson County courthouse in Black River Falls, and the individuals in the two courtrooms communicated via videoconferencing.

¶ 7. At the beginning of the plea hearing, Judge Lister acknowledged the use of videoconferencing and asked a series of questions relating to the acceptability of its use for the hearing. Judge Lister asked those in the Trempealeau County courtroom whether they could see and hear him to their satisfaction, to which Attorneys Kroner and Marsolek both answered "Yes." Additionally, the judge asked Soto and his attorney whether the use of videoconferencing was acceptable for the proceeding, and both answered affirmatively. After the

defendant and his attorney agreed to the use of video-conferencing for the hearing, Kroner asked whether there was a court reporter present with Judge Lister, to which the judge replied affirmatively.

¶ 8. Judge Lister then engaged in a detailed colloquy with Soto to ensure that Soto's guilty plea and the corresponding waiver of his constitutional rights were knowingly, intelligently, and voluntarily made. The judge also asked Kroner whether he believed that Soto entered into the plea agreement knowingly, intelligently, and voluntarily; whether Kroner believed that Soto understood the possible penalties he could face; and whether Kroner believed that the plea agreement was in Soto's best interest. Kroner responded to each of these inquiries affirmatively.

¶ 9. The court then confirmed Soto's understanding of his waiver of any potential intoxication and insanity defenses, as well as his loss of other civil rights implicated by pleading guilty to a felony. Finally, Judge Lister once more asked Soto whether there was anything about the proceedings that Soto did not understand or that he wished to discuss with either the court or his attorney. Soto replied, "No."

¶ 10. The court then found that Soto understood the proceedings and that he knowingly, intelligently, and voluntarily waived his constitutional rights while properly advised by counsel. On those findings, the court accepted Soto's plea, found him guilty, and convicted him of second-degree recklessly endangering safety with a deadly weapon. At a later date, Soto was sentenced to 15 years imprisonment, consisting of ten years of confinement and five years of extended supervision.

¶ 11. Soto moved for postconviction relief wherein he sought to withdraw his guilty plea and to vacate the judgment. Soto asserted that the proceeding at which he

pled guilty via videoconferencing violated due process, as well as his statutory right to be present as provided in Wis. Stat. § 971.04(1)(g). Soto argued that he could not have effectively waived his right to challenge the use of videoconferencing because he was not aware that such right existed and that, therefore, any waiver was not an intentional relinquishment or abandonment of a known right.

¶ 12. On July 1, 2010, the court heard Soto's motion for postconviction relief and denied the motion. Judge Lister reasoned that it was inconceivable that his sharing the same courtroom with Soto would have altered the proceeding in any relevant way. Distinguishing *State v. Peters,* 2000 WI App 154, 237 Wis. 2d 741, 615 N.W.2d 655, *rev'd on other grounds,* 2001 WI 74, 244 Wis. 2d 470, 628 N.W.2d 797, and *State v. Vennemann,* 180 Wis. 2d 81, 508 N.W.2d 404 (1993), Judge Lister noted the clarity of communications between the two courtrooms, the thorough colloquy between Soto and him, that both Soto and his attorney affirmatively agreed to proceed via videoconferencing and the multiple opportunities the court afforded Soto to seek clarification or to reconsider his decision to plead at that time.

¶ 13. Soto appealed. The court of appeals certified the appeal, which certification we accepted.

## II. DISCUSSION

### A. Standard of Review

¶ 14. This certification asks us to determine whether Soto's guilty plea must be set aside to correct a manifest injustice. *State v. McCallum,* 208 Wis. 2d 463,

473, 561 N.W.2d 707 (1997). Soto bases his assertion of manifest injustice on a claimed statutory right to be present in the same courtroom as the judge pursuant to Wis. Stat. § 971.04(1)(g), which he says was violated when videoconferencing was used at his plea hearing. Accordingly, we must construe and apply § 971.04(1)(g). The interpretation of a statute and its application to a particular set of facts present questions of law that we review independently of the circuit court's decision, but benefitting from its analysis. *Rasmussen v. Gen. Motors Corp.*, 2011 WI 52, ¶ 14, 335 Wis. 2d 1, 803 N.W.2d 623. Additionally, whether a defendant's undisputed statements and actions in a criminal proceeding constitute waiver of a statutory right is a question of law for our independent review. *State v. Ward*, 2009 WI 60, ¶ 17, 318 Wis. 2d 301, 767 N.W.2d 236.

B. Wisconsin Statutes § 971.04(1)(g)

¶ 15. The primary issue presented is whether a criminal defendant has a statutory right under Wis. Stat. § 971.04(1)(g) to be "present" in the same courtroom as the presiding judge when a guilty plea is made and judgment is pronounced. This issue requires us to determine whether pleas may come within § 971.04(1)(g). If they do in this case, then we must interpret "present" specifically in regard to where the defendant must be located and whether the judge must be at the same location as the defendant. Our discussion, therefore, begins with the plain language of the statute.[4] *Richards v. Badger Mut. Ins. Co.*, 2008 WI 52, ¶ 20, 309 Wis. 2d 541, 749 N.W.2d 581.

---

[4] We note at the outset of our discussion that Soto does not assert that a constitutional right was abridged by the manner in which the plea hearing was conducted. Although Soto's chal-

¶ 16. Wisconsin Stat. § 971.04 provides, in relevant part:

> (1) Except as provided in subs. (2) and (3), the defendant shall be present:
>
> (a) At the arraignment;
>
> (b) At trial;
>
> (c) During voir dire of the trial jury;
>
> (d) At any evidentiary hearing;
>
> (e) At any view by the jury;
>
> (f) When the jury returns its verdict;
>
> (g) At the pronouncement of judgment and the imposition of sentence;
>
> (h) At any other proceeding when ordered by the court.

¶ 17. Plea hearings are not mentioned in Wis. Stat. § 971.04(1). However, the State and Soto focus on para. (1)(g), which provides that a defendant must be present at a proceeding where there is a "pronouncement of judgment." In that regard, we note that at the plea hearing Judge Lister said:

> I accept his plea of guilty, and I find him guilty, and upon this finding, it is adjudged that he is convicted of the crime of second degree recklessly endangering safety in violation of 941.30(2) of the Wisconsin Statutes, and that he is convicted of using or possessing a dangerous weapon in the course of committing that crime in violation of 939.63 of the Wisconsin Statutes

lenge was initially based in part on an alleged deprivation of due process, he has abandoned his constitutional challenge in this court.

as charged in Count 5 of the Amended Information, and I adjudge him convicted on this date, and I order a Judgment of Conviction entered in the record.

¶ 18. Based on this statement from the court, we agree that Wis. Stat. § 971.04(1)(g) is relevant to Soto's claim because judgment was pronounced at the hearing where he pled guilty.[5] However, although § 971.04(1)(g) speaks to the defendant being "present," it says nothing about where the defendant or the judge are located. If the judge and the defendant are required to be in the same location when judgment is pronounced, the use of videoconferencing for pleas when judgment is pronounced may be problematic. This requires us to interpret § 971.04(1)(g).

¶ 19. Statutory interpretation is undertaken to determine the statute's meaning, which we assume is expressed in the language chosen by the legislature. *Richards,* 309 Wis. 2d 541, ¶ 20. If the meaning of the statute is clear from the plain language, we give effect to that language. *State ex rel. Kalal v. Circuit Court for Dane Cnty.,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We give statutory terms their "common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.,* ¶ 45.

¶ 20. Additionally, a plain meaning analysis may look to statutory context and structure. *See id.,* ¶ 46. Indeed, the statutory context in which a term is used, including the language and structure of surrounding or

---

[5] It may be possible to have a plea accepted, but not have the court pronounce judgment. As these are not the facts before us, we do not address this potential further.

closely related statutes, is often highly instructive in determining a term's meaning. *State v. Jensen,* 2010 WI 38, ¶ 15, 324 Wis. 2d 586, 782 N.W.2d 415. The purposes underlying a statute are also useful in ascertaining a statute's meaning. *Sheboygan Cnty. Dep't of Health & Human Servs. v. Tanya M.B.,* 2010 WI 55, ¶ 28, 325 Wis. 2d 524, 785 N.W.2d 369. Finally, when engaging in statutory interpretation, we are assisted by prior decisions that have examined the relevant statutes. *See DeHart v. Wis. Mut. Ins. Co.,* 2007 WI 91, ¶ 15, 302 Wis. 2d 564, 734 N.W.2d 394.

¶ 21. Therefore, when interpreting "present" in Wis. Stat. § 971.04(1)(g), we look to common understandings of that term, its apparent purpose and surrounding provisions governing criminal procedure, as well as the related statute governing the use of videoconferencing, Wis. Stat. § 885.60.

¶ 22. "Present" is not defined in the statutes. However, from a plain meaning interpretation, we conclude that "present" under Wis. Stat. § 971.04(1) means that a criminal defendant has a right to personally appear at the proceedings where judgment is pronounced, here, at the plea hearing. Therefore, in the context of § 971.04(1)(g), "present" means the defendant is in a courtroom when the plea is made and judgment is pronounced. However, the statute is silent in regard to whether the judge must also be present in the same courtroom as the defendant.

¶ 23. We have required that the defendant be in a courtroom because the statute clearly speaks to the defendant's presence at the location of the proceeding. Requiring that the defendant be present in the courtroom is guided also by the belief that a courtroom is a setting epitomizing and guaranteeing "calmness and solemnity," *see Cox v. Louisiana,* 379 U.S. 536, 583

(1965) (Black, J., dissenting), so that a defendant may recognize that he has had access to the judicial process in a criminal proceeding. Finally, requiring the defendant to make his appearance in a courtroom avoids the potential or perceived problems that can occur when the defendant is located in another facility such as a jail, while the judge, prosecutor, and perhaps even defense counsel are in the courtroom. *See generally* Anne Bowen Poulin, *Criminal Justice and Videoconferencing Technology: The Remote Defendant,* 78 Tul. L. Rev. 1089 (2004).

¶ 24. The purposes served by the defendant being "present" during a plea hearing and the context in which "present" is used are instructive. *See Kalal,* 271 Wis. 2d 633, ¶ 48. For example, when a plea is taken on a felony, one statutory purpose served by the defendant's presence is to permit the circuit court to conduct a colloquy to determine whether there is a sufficient factual basis for the plea and that the defendant is pleading knowingly, intelligently, and voluntarily. Wis. Stat. § 971.08(1); *see State v. Trochinski,* 2002 WI 56, ¶¶ 16–17, 253 Wis. 2d 38, 644 N.W.2d 891.

¶ 25. When the videoconferencing is such that the judge can see, speak to and hear the defendant and his counsel, and the defendant and his counsel can see, speak to and hear the judge, the statutory purpose of ascertaining whether the plea is being made knowingly, intelligently, and voluntarily can be fulfilled. Accordingly, it is not necessary to satisfying that purpose of "present" in Wis. Stat. § 971.04(1)(g) that the judge and the defendant both be at the same location.

¶ 26. Pronouncement of judgment demonstrates the State's power to require compliance with the criminal code and to hold accountable those who do not comply. Accordingly, another purpose served by the

requirement that the defendant be present in a courtroom when judgment is pronounced is to effectively display the State's power. At pronouncement of judgment, the power of the State resides in the court, then personified by the circuit court judge. That state power is more forcefully exercised when the defendant and the judge are in the same courtroom, rather than having the defendant in a courtroom and the judge in a remote location.

¶ 27. Furthermore, the Wis. Stat. § 971.04(1) requirement that "the defendant shall be present" applies to multiple paragraphs of § 971.04(1), such as (1)(b), "[a]t trial," (1)(c), "[d]uring voir dire of the trial jury," and (1)(f), "[w]hen the jury returns its verdict." One would expect that the judge would be present in the same courtroom as the defendant when a trial is ongoing, when the jury is being questioned prior to their selection, and when the verdict is returned. It would be contrary to the plain meaning of "present" to conclude that the term had different meanings for different paragraphs of subsec. (1) that employ a common introductory statement. Accordingly, we conclude that under § 971.04(1)(g), Soto had a statutory right to be present in the same courtroom as the judge when he made his guilty plea because the judge accepted Soto's plea and pronounced judgment in regard to the crime to which Soto pled.

¶ 28. Wisconsin Stat. § 971.04(1) has been mentioned in several Wisconsin opinions, but none of them involved circumstances similar to those presented herein. For example, in *Vennemann,* we considered whether a convicted defendant was required to be present for a postconviction motion hearing. *Vennemann,* 180 Wis. 2d at 85. Vennemann was in prison and the hearing was conducted with a telephone

hookup between the court and Vennemann, pursuant to Wis. Stat. § 967.08. *Id.* Therefore, communications between the judge and the defendant had no video component. In addition, the audio component faded in and out, with the defendant often being unable to hear at all. *Id.* at 91–92. We concluded that § 971.04(1)(d) did not apply to postconviction evidentiary hearings, *id.* at 93, and that a patchy telephone connection from prison was insufficient under § 967.08 for the evidentiary issues presented. *Id.* at 87–88. Therefore, although our decision today does not conflict with our holding in *Vennemann,* because of the different focus of our discussion therein, we do not rely on *Vennemann.*

¶ 29. In *State v. Koopmans,* 210 Wis. 2d 670, 563 N.W.2d 528 (1997), we examined whether a defendant had waived her Wis. Stat. § 971.04(1)(g) right to be present at sentencing. *Id.* at 672–73. The defendant was out of the country at the time set for sentencing. *Id.* at 673–74. The circuit court concluded that she had voluntarily absented herself from the sentencing proceedings and by doing so, she had waived her § 971.04(1)(g) right to be present at those proceedings. *Id.* at 674. The circuit court then sentenced her in absentia. *Id.* We concluded that being out of the country could not constitute being "present," as that term is used in § 971.04(1)(g). *Id.* at 677–79. We also concluded that Koopmans had not waived her right to be present at the sentencing. *Id.* at 677.

¶ 30. However, *Koopmans* did not examine whether "present" under Wis. Stat. § 971.04(1)(g) could be satisfied by videoconferencing. Our decision in *Koopmans* did not have the occasion to interpret the term "present" and what conditions may fulfill the statutory directive, as we have done here.

¶ 31. In addition to relying on the term "present" as it is used in Wis. Stat. § 971.04(1)(g), Soto also asserts that his right to be "physically present" under Wis. Stat. § 885.60(2)(a) supports his interpretation of "present" under § 971.04(1)(g). Section 885.60 provides in relevant part:[6]

> (1) Subject to the standards and criteria set forth in ss. 885.54 and 885.56 and to the limitations of sub. (2), a circuit court may, on its own motion or at the request of any party, in any criminal case or matter under chs. 48, 51, 55, 938, or 980, permit the use of videoconferencing technology in any pre-trial, trial or fact-finding, or post-trial proceeding.

> (2)(a) Except as may otherwise be provided by law, a defendant in a criminal case and a respondent in a matter listed in sub. (1) is entitled to be physically present in the courtroom at all critical stages of the proceedings, including evidentiary hearings, trials or fact-finding hearings, plea hearings at which a plea of guilty or no contest, or an admission, will be offered, and sentencing or dispositional hearings.

> . . . .

> (d) If an objection is made by the defendant or respondent in a matter listed in sub (1), the court shall sustain the objection.

¶ 32. Videoconferencing by its very nature implies that more than one location will be used for a proceed-

---

[6] Wisconsin Stat. § 885.60(2)(a) was amended in 2011, and no longer lists a plea hearing in which a guilty plea is offered. Instead, the amended § 885.60(2)(a) provides that a defendant "is entitled to be physically present in the courtroom at all trials and sentencing or dispositional hearings." 2011 Wis. Act 32, § 3492r. We confine our analysis and decision to the provision as it read at the time of Soto's plea hearing.

ing. Therefore, the statute envisions that the judge and the defendant may not be in the same location. Wisconsin Stat. § 885.60(2)(a) employs the term "physically present" to describe the location of the defendant, rather than the term "present," as Wis. Stat. § 971.04(1) does. Accordingly, it might be argued that what is necessary to satisfy "physically present" may, or may not, be exactly the same as what is required to satisfy "present" under § 971.04(1). However, we note that § 885.60 was fully derived from a Supreme Court rule through a legislative delegation under Wis. Stat. § 751.12. S. Ct. Order No. 07–12, 2008 WI 37, 305 Wis. 2d xli (issued May 1, 2008, eff. July 1, 2008). Section 751.12 prohibits the supreme court from abridging, enlarging or modifying the substantive rights of any litigant when creating a Supreme Court rule under § 751.12(1). Accordingly, § 885.60(2)(a) cannot enlarge or diminish a defendant's statutory right established by § 971.04(1)(g).

¶ 33. In the case before us, Soto expressly consented to the use of two locations. The court questioned him thoroughly about the use of videoconferencing and whether he agreed to the use of videoconferencing for his plea. Soto repeatedly assured the court that the videoconferencing equipment was working well and that he could see, speak to and hear the judge and that he agreed to proceed by videoconferencing. He made no Wis. Stat. § 885.60(2)(d) objection of any type. Therefore, we conclude that § 885.60 has no relevance to whether Soto's plea was lawfully accepted during the videoconferencing used for his plea hearing.

■■■

¶ 34. Returning now to Wis. Stat. § 971.04(1)(g) and applying the principles we have discussed to Soto's plea hearing, we conclude that Soto had a statutory

right to be present in the same courtroom as the presiding judge when he pled guilty and the judge accepted his plea and pronounced judgment in regard to the crime to which he pled. However, that is not the end of our discussion because Judge Lister was diligent in acknowledging and questioning Soto about the use of videoconferencing.

## C. Waiver

¶ 35. The State contends, and we agree, that Soto affirmatively waived his statutory right to be present in the same courtroom as the presiding judge during the plea hearing. We begin by clarifying that this is not a case of forfeiture. We recently examined the distinction between forfeiture and waiver in *State v. Ndina,* 2009 WI 21, ¶¶ 28–31, 315 Wis. 2d 653, 761 N.W.2d 612. Therein, we stated the distinction between the triggering of each theory as grounded in the existence of a volitional act: " 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.' " *Id.,* ¶ 29 (quoting *United States v. Olano,* 507 U.S. 725, 733 (1993)).

¶ 36. One distinction between the two theories of relinquishment lies in the importance of the right being relinquished and the procedural efficiency of imposing an earlier final determination of the relinquishment of the right. *See id.,* ¶¶ 30–31. Rights that are subject to forfeiture are typically those whose relinquishment will not necessarily deprive a party of a fair trial, and whose protection is best left to the immediacy of the trial, such as when a party fails to raise an evidentiary objection. *See id.,* ¶ 30. Forfeiture promotes expediency and efficiency in proceedings leading up to and including trial, wherein the threat of immediately losing the right en-

62

courages diligent preparation and attention so as to avoid forgoing such rights as may be forfeited. *See id.* The mutual consolation of forfeiture is that each party can be confident that a right forfeited by the other will not be relitigated in some subsequent appeal or proceeding. *See id.*

■

¶ 37. In contrast to forfeiture, waiver typically applies to those rights so important to the administration of a fair trial that mere inaction on the part of a litigant is not sufficient to demonstrate that the party intended to forgo the right. *See id.,* ¶ 31. Rights subject to waiver require some affirmative relinquishment on the part of the holder. *See id.* Rights subject to waiver include constitutional protections such as the right to trial by jury, the right to counsel, and the right to refrain from self-incrimination. *State v. Huebner,* 2000 WI 59, ¶ 14, 235 Wis. 2d 486, 611 N.W.2d 727. Additionally, certain statutory rights have been deemed sufficiently important as to require the affirmative relinquishment demanded by the doctrine of waiver.[7] *See State v. Shirley E.,* 2006 WI 129, ¶¶ 35–39, 53–54, 298 Wis. 2d 1, 724 N.W.2d 623 (explaining that a parent has a statutory right to counsel at the dispositional phase of a termination of parental rights proceeding that is subject to waiver).

■ ■

¶ 38. Therefore, when determining whether a right is subject to forfeiture or waiver, we look to the constitutional or statutory importance of the right,

---

[7] We have previously acknowledged the imprecision in labeling certain scenarios subject to the "waiver rule," as that phrasing was often used to refer to forfeiture rather than true waiver. *See State v. Huebner,* 2000 WI 59, ¶ 11 n.2, 235 Wis. 2d 486, 611 N.W.2d 727.

balanced against the procedural efficiency in requiring immediate final determination of the right. Accordingly, even where a right is not constitutionally protected, but where it is one of clear importance to the fair administration of justice, we will hold that the right is subject to waiver, rather than forfeiture. *See Huebner,* 235 Wis. 2d 486, ¶¶ 11, 14–15.

¶ 39. Other courts and commentators have recognized that waiver is an important component of substantive rights. *See* Michael E. Tigar, *Foreword: Waiver of Constitutional Rights: Disquiet in the Citadel,* 84 Harv. L. Rev. 1 (1970). Indeed, the implied right to waive substantive rights, whether constitutional or statutory, affords criminal defendants a valuable bargaining chip at various stages of the proceedings. *See id.* at 8 ("It is waiver of rights that permits the system of criminal justice to work at all."). Indeed, the applicability of waiver is demonstrated by the near-ubiquity of allowing waiver in criminal procedure. *See* Daniel P. Blank, *Plea Bargain Waivers Reconsidered: A Legal Pragmatist's Guide to Loss, Abandonment and Alienation,* 68 Fordham L. Rev. 2011, 2012–13 (2000). The policy underlying allowing waiver of important constitutional and statutory rights supports our conclusion that the defendant's right to be present under Wis. Stat. § 971.04(1)(g) is subject to waiver.

¶ 40. We conclude that a defendant's right to be present in the same courtroom as the presiding judge at the proceedings listed in Wis. Stat. § 971.04(1)(g) is particularly important to the actual or perceived fairness of the criminal proceedings. Therefore, if this right is to be relinquished, it must be done by waiver, the "intentional relinquishment of a known right." *See Brunton v. Nuvell Credit Corp.,* 2010 WI 50, ¶ 37, 325 Wis. 2d 135, 785 N.W.2d 302 (concluding that proper venue could be

waived by an appearance and conduct evincing the intentional relinquishment of the right to proper venue).

¶ 41. Our conclusion on the applicability of waiver must consider our holding in *Koopmans.* As explained earlier, in *Koopmans,* we examined whether a defendant who had voluntarily absented herself from a scheduled sentencing hearing could be deemed to have waived her right to be present.[8] It is important to note that contrary to the circumstances herein presented, Koopmans did not participate personally in the sentencing hearing in any fashion. We held that Koopmans' absence did not demonstrate that she had waived the right to be present. *Koopmans,* 210 Wis. 2d at 679–80. Accordingly, we held that resentencing was necessary. *Id.* at 680.

¶ 42. Despite *Koopmans'* potentially broad statement that waiver was not available under Wis. Stat. § 971.04(1)(g) for a defendant who voluntarily absents herself from the sentencing proceeding, we conclude that the language of § 971.04(1)(g) and the policy of allowing waiver of many important constitutional and statutory rights requires that the right to be present in the same courtroom as the presiding judge also includes the corresponding right to waive that right and proceed by videoconferencing.

---

[8] Soto argues that *Koopmans* stands for a broad rule that the right to be present absolutely cannot be waived. In light of the narrow question presented in that case, we do not read *Koopmans* as necessarily stating such a sweeping rule. Instead, we conclude that the case should be read to hold that a defendant who absents herself from sentencing, without more, has not sufficiently demonstrated waiver of her right to be physically present. *See State v. Koopmans,* 210 Wis. 2d 670, 675, 563 N.W.2d 528 (1997) (phrasing the issue as "[w]hether a defendant may waive the right to be present at sentencing by knowingly[, intelligently] and voluntarily absenting himself or herself").

¶ 43. The question underlying the appeal in *Koopmans,* whether waiver was shown by the facts of that case, should not be extrapolated to mean anything more than the right to be present cannot be forfeited by mere absence. Understood in this light, *Koopmans* established the precursor for our holding today that waiver, rather than forfeiture, is the appropriate doctrine under which a criminal defendant may relinquish his right to be present in the same courtroom as the presiding judge when judgment is pronounced.

![redacted]

¶ 44. Therefore, in accordance with *Koopmans, Ndina* and our interpretation of Wis. Stat. § 971.04(1)(g), we conclude that a defendant in a criminal proceeding where judgment is pronounced may waive, but not forfeit, the right to be in the same courtroom as the presiding judge during those proceedings. We also note, however, that the showing necessary to demonstrate waiver of a right differs, depending on the right that is at issue.

¶ 45. As we have explained, even where waiver is required, different types of rights require different showings to demonstrate that the waiver is knowing, intelligent, and voluntary. For example, in *State v. Denson,* 2011 WI 70, 335 Wis. 2d 681, 799 N.W.2d 831, we concluded that a circuit court is "not required to conduct an on-the-record colloquy" to determine whether a defendant is knowingly, intelligently, and voluntarily waiving his or her right not to testify. *Id.,* ¶ 63; *see also Rao v. WMA Sec., Inc.,* 2008 WI 73, ¶ 22, 310 Wis. 2d 623, 752 N.W.2d 220 (concluding that a party may waive the Wisconsin Constitution Article I, Section 5 right of trial by jury by failing to assert the right timely or by failing to pay a required jury fee). Although a formal colloquy is often employed to show

waiver, it is not the only way in which waiver may be shown. *See Denson,* 335 Wis. 2d 681, ¶¶ 63–67.

¶ 46. When videoconferencing is proposed for a plea hearing at which it is anticipated that judgment will be pronounced, the judge should enter into a colloquy with the defendant that explores the effectiveness of the videoconferencing then being employed. In that regard, the judge shall ascertain whether the defendant and his attorney, if represented by counsel, are able to see, speak to and hear the judge and that the judge can see, speak to and hear the defendant and counsel. The judge shall also ascertain, either by personal colloquy or by some other means, whether the defendant knowingly, intelligently, and voluntarily consents to the use of videoconferencing. In so doing, questions should be asked to suggest to the defendant that he has the option of refusing to employ videoconferencing for a plea hearing at which judgment will be pronounced.

¶ 47. In the case before us, Judge Lister carefully questioned Soto and counsel:

THE COURT: Can everyone hear me all right there?

MS. MARSOLEK: Yes.

MR. KRONER: Yes.

THE COURT: And can everyone see me all right?

MS. MARSOLEK: Yes.

MR. KRONER: Yes.

. . . .

THE COURT: All right. Mr. Kroner, are you satisfied with appearing at this plea hearing by video teleconferencing?

67

MR. KRONER: Yes, Your Honor.

THE COURT: And, Mr. Soto, is it all right with you that we are doing this plea hearing by video teleconferencing?

THE DEFENDANT: Yes, sir.

. . . .

THE COURT: And, Mr. Soto, do you wish to enter a plea today?

THE DEFENDANT: Yes.

. . . . (lengthy plea colloquy held)

THE COURT: Mr. Soto, again, do you still wish to plead guilty?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Is there anything at all, Mr. Soto, about what's happening that you don't understand or that you would like to ask me or Mr. Kroner?

THE DEFENDANT: No.

¶ 48. Based on the record presented in this case, we conclude that Soto waived his Wis. Stat. § 971.04(1)(g) right to be present in the same courtroom as Judge Lister during his plea hearing when judgment was pronounced. Judge Lister's colloquy was sufficient to demonstrate that Soto and his attorney could see, speak to and hear Judge Lister and the judge could see, speak to and hear Soto and his counsel. The colloquy demonstrated that the videoconferencing was functioning properly.

¶ 49. Judge Lister also ascertained that Soto was knowingly, intelligently, and voluntarily agreeing to the use of videoconferencing for the plea hearing. Judge

Lister asked Soto and his attorney whether proceeding via videoconferencing was acceptable, and each responded affirmatively. His questions indicated that Soto did not have to agree to the use of videoconferencing, and the plea colloquy proceeded as it would have if all the parties and the judge were in the same courtroom. After Judge Lister ascertained that Soto was making a knowing, intelligent, and voluntary plea, he offered Soto yet another opportunity to object to the use of videoconferencing. Judge Lister proceeded correctly. Soto affirmatively waived his statutory right to be present in the same courtroom as the judge during the plea hearing where judgment was pronounced.

## III. CONCLUSION

¶ 50. We conclude that Wis. Stat. § 971.04(1)(g) provides a criminal defendant the statutory right to be in the same courtroom as the presiding judge when a plea hearing is held if the court accepts the plea and pronounces judgment. However, we also conclude that this statutory right may be waived and that Soto waived it prior to pleading and the court's pronouncement of judgment. We so conclude because Soto appeared in a courtroom in the Trempealeau County courthouse; both his attorney and the prosecuting attorney also appeared in the same courtroom; through videoconferencing, the judge was able to see, speak to and hear Soto and Soto was able to see, speak to and hear the circuit court judge; the judge explained that videoconferencing would be used for the plea hearing if Soto chose to enter a plea that day; and Soto expressly consented to the use of videoconferencing for the plea hearing. Accordingly, we affirm the circuit court's order denying Soto's motion to withdraw his guilty plea.

*By the Court.*—The order and judgment of the circuit court are affirmed.

69

¶ 51. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I agree with a number of the majority opinion's conclusions. I dissent, however, because I disagree with the majority's conclusion that the record in the present case demonstrates that Soto, the defendant, knowingly, intelligently, and voluntarily waived his right to be present in the same courtroom as the judge under Wis. Stat. § 971.04(1)(g) when judgment was pronounced.

¶ 52. First, I agree with the majority that under Wis. Stat. § 971.04(1)(g) Soto had a statutory right to be present in the same courtroom as the judge "at the pronouncement of judgment." Majority op., ¶ 27.

¶ 53. Section 971.04 was created in its current form by the legislature in 1969,[1] before widespread telephone conferencing and videoconferencing existed. At that time, the legislature obviously did not contemplate long-distance telecommunications in the courtroom. Rather, the legislature envisioned judicial proceedings with the plaintiff, defendant, judge, and court staff physically present in the same courtroom. Telephone conferencing[2] and videoconferencing[3] came into the courtroom at a later date.

---

[1] Laws of 1969, ch. 255.

Prior to 1969, Wis. Stat. § 957.07 (1967) provided: "A defendant accused of a felony shall be personally present during the trial. A defendant accused of a misdemeanor may at his written request and by leave of court be tried in his absence if represented by his attorney duly authorized for that purpose."

[2] Telephone or live audio-visual means, Wis. Stat. § 967.08, was authorized by supreme court order in 1987 to be used in certain limited contexts. *See* S. Ct. Order, *In the Matter of the Amendment of Rules of Civil, Criminal and Appellate Procedure: Proceedings by Telephone and Audio-Visual Means,* 141 Wis. 2d xiii (eff. Oct. 29, 1987).

[3] A rule governing the use of videoconferencing in the

¶ 54. Thus, the date of the enactment of Wis. Stat. § 971.04 supports the conclusion that Soto had a statutory right to be present in the same courtroom as the judge at the pronouncement of judgment.

¶ 55. Second, I agree with the majority that the word "present" in Wis. Stat. § 971.04(1) should have the same meaning in each paragraph describing a proceeding, (a) though (g), of Wis. Stat. § 971.04(1). Majority op., ¶ 27. It does not make sense for the same word to have different meanings in the same statute.

¶ 56. Although the majority opinion frequently refers to the right of the defendant to be present at the plea hearing, the plea hearing is not mentioned in Wis. Stat. § 971.04(1) as a proceeding at which the defendant shall be present.[4] The important proceeding for purposes of the statute and the instant case is the pronouncement of judgment.

---

courts, Wis. Stat. § (Rule) 885.60, was created by supreme court order in 2008. *See* S. Ct. Order 07–12, 305 Wis. 2d xli (eff. July 1, 2008).

[4] Wisconsin Stat. § 971.04 provides as follows:

**Defendant to be present. (1)** Except as provided in subs. (2) and (3), the defendant shall be present:

(a) At the arraignment;

(b) At trial;

(c) During voir dire of the trial jury;

(d) At any evidentiary hearing;

(e) At any view by the jury;

(f) When the jury returns its verdict;

(g) At the pronouncement of judgment and the imposition of sentence;

(h) At any other proceeding when ordered by the court.

71

¶ 57. Third, I agree with the majority that the defendant may waive his statutory right to be present in the same courtroom as the judge at the time judgment is pronounced and proceed by videoconferencing.[5] Majority op., ¶¶ 42, 44. The law recognizes that a defendant may waive rights.

¶ 58. Fourth, I agree with the majority that such a waiver must be shown to be knowing, intelligent, and voluntary. Majority op, ¶ 45.

¶ 59. I dissent, however, because I disagree with the majority's conclusion that the record in the present case demonstrates that Soto, the defendant, knowingly, intelligently, and voluntarily waived his right to be present in the same courtroom as the judge under Wis. Stat. § 971.04(1)(g) when judgment was pronounced. *See* majority op., ¶¶ 48–49.

¶ 60. Soto asserts that he was not aware that he had such a right. He argues that if he did not know he had the right he could not possibly knowingly, intelligently, and voluntarily waive the right. *See* majority op., ¶ 11. Soto has never had a hearing to assess his claim, which on its face undercuts the argument that any waiver was knowing, intelligent, and voluntary.

¶ 61. It is difficult to understand how the majority can conclude that Soto's waiver of the right to be present at the pronouncement of judgment was knowing, intelligent, and voluntary when the majority acknowledges that Soto claims to be unaware that the right existed and that the circuit court did not inform Soto that the right existed.

---

[5] This appeal does not address whether a defendant may waive the right to be present at other proceedings included in Wis. Stat. § 971.04(1). Those are questions for another day.

¶ 62. Indeed, in *Brunton v. Nuvell Credit Corp.*, 2010 WI 50, 325 Wis. 2d 135, 785 N.W.2d 302, a case relied upon by the majority at ¶ 40, the court explained that to establish a valid waiver of the statutory right the party relying on waiver must prove that the waiving party knew of the right being waived. *Brunton* explained: "Establishing that a party knew of the right at issue [proper venue] is essential to establishing waiver. . . . Stated differently, a valid waiver that intentionally relinquishes a right must be done with actual knowledge of the right being waived." *Brunton,* 325 Wis. 2d 135, ¶ 36 (defendant's waiver of right to proper venue under Wis. Stat. § 421.401(2)).

¶ 63. Similarly, in *State v. Smith,* 2012 WI 91, ¶¶ 52–57, 342 Wis. 2d 710, 817 N.W.2d 410, a case involving the right to a jury trial, the court acknowledged the necessity that a defendant be informed that a constitutional right exists before he or she may knowingly, intelligently, and voluntarily waive that right. The court stated: "[The defendant] was never informed that he had a constitutional right to a jury determination of the drug quantity, nor was he ever given the opportunity to waive or invoke that right. Accordingly, we hold that Smith did not waive his constitutional right to a jury determination of the drug quantity." *Smith,* 2012 WI 91, ¶ 57. Even though the defendant in *Smith* had entered a stipulation to the quantity of drug involved, this court held that the defendant had not knowingly, intelligently, and voluntarily waived the right to a jury trial on that issue because he was not informed that the right existed and he was not asked whether he wished to waive the right. *Smith,* 2012 WI 91, ¶¶ 54–57.

¶ 64. Nothing in the record in the present case demonstrates that the defendant knew he had a right to

be present in the same courtroom as the circuit court judge. He was not told such a right exists. The majority's conclusion that there was a knowing, intelligent, and voluntary waiver is out of step with this court's case law and the record in the present case.

¶ 65. The majority lays out the relevant portion of the transcript at paragraph 47. The circuit court asked if everyone could see and hear.[6] The circuit court then asked the defendant's attorney if he was "satisfied with appearing at the *plea hearing* by video teleconferencing" and asked the defendant if it was "all right with you that we are doing this *plea hearing* by video teleconferencing." (Emphases added.)

¶ 66. A plea hearing is not one of the proceedings included in Wis. Stat. § 971.04(1) in which the defendant shall be present. The circuit court asked the defendant's attorney and the defendant if it was all right with them to conduct "*the plea hearing*" by video teleconferencing. Noticeably absent is the circuit court asking the defendant's attorney and the defendant if it was all right with them to conduct "the pronouncement of judgment" by video teleconferencing. According to § 971.04(1)(g), it is at the "pronouncement of judgment" that the defendant shall be present. Absent from the colloquy is an agreement to have judgment pronounced at a proceeding in which the defendant and the circuit court judge were in different courtrooms with the proceeding conducted using videoconferencing.

¶ 67. Also crucially absent from the colloquy is any explicit statement to the defendant that he has the right to be present in the same courtroom as the circuit court judge at the "pronouncement of judgment" and

---

[6] The videoconferencing rule lays out technical and operational standards. *See* Wis. Stat. § (Rule) 885.54(1)(a).

that "he has the option of refusing to employ videoconferencing," which the majority asserts should be a part of the colloquy. Majority op., ¶ 46.

¶ 68. The defendant argues that he could not possibly have waived the right to be physically present at the pronouncement of judgment knowingly, intelligently, and voluntarily, because he claims he did not know such a right existed. *See* majority op., ¶ 11. Despite the defendant's claim that he was unaware the right existed and despite the colloquy not advising him of the right and not being focused on the pronouncement of judgment, the majority still concludes on the basis of a minimal colloquy and no evidentiary hearing that the waiver of the Wis. Stat. § 971.04(1)(g) right to be present at the "pronouncement of judgment" was valid.

¶ 69. The majority concludes that the waiver was valid because (1) the colloquy demonstrated that the defendant and his attorney could see, speak to, and hear the judge and vice versa, thereby demonstrating "that the videoconferencing was functioning properly," majority op., ¶ 48 (*see also* ¶ 46); and (2) the colloquy demonstrated that the circuit court's questions "suggest[ed] to the defendant that he has the option of refusing to employ videoconferencing" and that he voluntarily consented to its use. Majority op., ¶ 46 (*see also* ¶ 49).

¶ 70. The only part of the record on which the majority could rely to determine that the defendant's waiver of his presence at the pronouncement of judgment was knowing, intelligent, and voluntary is the circuit court's question, "Is it all right with you that we are doing this *plea hearing* by video teleconferencing?" and the defendant's response, "Yes sir." This is no assurance that the defendant's waiver of his presence at the pronouncement of judgment was truly knowing, intelligent, and voluntary.

¶ 71. Imagine such a "waiver" in other contexts. The court would not be satisfied that a defendant had knowingly, intelligently, and voluntarily waived the right to a jury trial if the circuit court simply asked, "Is it all right with you if I make the decision in your case?" and the defendant answered, "Yes, sir." If a defendant is not given a clear explanation of the right at issue and a clear assurance that saying "no" to the circuit court is allowed, we should not hold that the defendant knowingly, intelligently, and voluntarily waived the right.

¶ 72. The majority states that "different types of rights require different showings to demonstrate that the waiver is knowing, intelligent, and voluntary." *See* majority op., ¶ 45. However, the requirement of showing that a waiver is knowing, intelligent, and voluntary is the same from one right to another. No matter what right is at issue, a court must advise the defendant of the specific right and ask questions to ensure the defendant understands the right. Naturally, the questions necessary to ensure the defendant understands the right will differ depending on the nature of the right at issue.[7] But the fact that different questions are relevant to demonstrate a knowing, intelligent, and voluntary waiver for different rights does not mean that the overarching requirement of showing that the waiver is knowing, intelligent, and voluntary is any different from one right to another.

¶ 73. I do not suggest that this court ought to impose a rigid rule on circuit courts for how they must determine that a defendant's waiver of the right to be present at the pronouncement of judgment is knowing, intelligent, and voluntary. However, to adhere to cases

---

[7] *See, e.g., State v. Anderson,* 2002 WI 7, ¶ 24, 249 Wis. 2d 586, 638 N.W.2d 301 (providing specific instructions to circuit courts for finding a knowing, intelligent, and voluntary waiver of the right to a jury trial).

like *Brunton* and *Smith,* this court should not conclude that a defendant's waiver is knowing, intelligent, and voluntary unless it is assured from the record that the defendant knew of his or her right to be in the same courtroom as the judge, that the defendant knew he or she could exercise the right, that the defendant consented to the judge and defendant being in separate courtrooms, and that the defendant's consent was given voluntarily without threat or promise.[8]

¶ 74. Furthermore, the majority's conclusion that the meager colloquy in the present case sufficiently establishes a knowing, intelligent, and voluntary waiver flies in the face of the express statements of this court in adopting rules regarding videoconferencing. The comment in the Supreme Court's Order adopting videoconferencing states that the "intent of [Wis. Stat.] s. 885.60 [is] to *scrupulously protect the rights* of criminal defendants . . . *by preserving* to such litigants *the right to be physically present in court* at all critical stages of their proceedings."[9]

¶ 75. A formal colloquy is not always an absolute requirement, depending on the right involved, but it is often an easy and good way of assuring a knowing, intelligent, and voluntary waiver. The majority relies on *State v. Denson,* 2011 WI 70, ¶ 63, 335 Wis. 2d 681, 799 N.W.2d 831, in which the court held that "circuit courts

---

[8] As the majority explains, the circuit court should also ascertain that the videoconferencing technology is functioning properly, but the controversy in the present case is not about the quality of the technology. A defendant who waives the Wis. Stat. § 971.04(1)(g) right to be present at the pronouncement of judgment might nonetheless have a colorable claim on other grounds if it turns out the quality of the videoconferencing technology is inadequate.

[9] See S. Ct. Order 07–12, 305 Wis. 2d xlvii-xlviii (eff. July 1, 2008) (emphases added).

are not required to conduct an on-the-record colloquy to determine whether a defendant is knowingly, voluntarily, and intelligently waiving his or her right *not* to testify." *See* majority op., ¶ 45. In contrast, such an on-the-record colloquy is required for waiver of the right to testify.[10]

¶ 76. The *Denson* court made this decision after considering at some length the unique potential troublesome consequences of a circuit court's conducting a colloquy on the right *not* to testify. *See Denson,* 335 Wis. 2d 681, ¶¶ 64–66.[11] Given the unique concerns if a colloquy on the right *not* to testify were required, the court held that it was acceptable for the issue of whether the waiver of the right *not* to testify was knowing, intelligent, and voluntary to be decided at a postconviction evidentiary hearing. *Denson,* 335 Wis. 2d 681, ¶ 68.

¶ 77. *Denson* stands for the proposition that for the particular right at issue in that case, a non-existent or inadequate colloquy may not warrant automatic reversal. *Denson* does *not* stand for the proposition that anything less than a knowing, intelligent, and voluntary waiver will suffice for a right subject to waiver.[12] The record in the present case, unlike in *Denson,* does not

---

[10] *See State v. Weed,* 2003 WI 85, ¶ 2, 263 Wis. 2d 434, 666 N.W.2d 485.

[11] The court nonetheless recommended that circuit courts conduct an on-the-record colloquy because it is the "clearest and most efficient means of ensuring that the defendant has validly waived his or her right not to testify . . . ." *State v. Denson,* 2011 WI 70, ¶ 67, 335 Wis. 2d 681, 799 N.W.2d 831 (internal quotation marks omitted).

[12] In *Denson,* it was established at a postconviction evidentiary hearing that the waiver was knowing, intelligent, and voluntary. *Denson,* 335 Wis. 2d 681, ¶ 71.

sufficiently demonstrate that the defendant's waiver of the right to be present at the pronouncement of judgment was knowing, intelligent, and voluntary.

¶ 78. In *Denson* there was a postconviction evidentiary hearing to determine whether the waiver was knowing, intelligent, and voluntary. In the present case, unlike in *Denson,* there was neither an adequate colloquy nor a postconviction evidentiary hearing to establish that Soto's waiver was knowing, intelligent, and voluntary. Nothing in *Denson* changes the rule that the record must demonstrate to an appellate court that the defendant's waiver of the right to be present was knowing, intelligent, and voluntary.

¶ 79. The majority also relies on *Rao v. WMA Securities, Inc.,* 2008 WI 73, 310 Wis. 2d 623, 752 N.W.2d 220, for its proposition that a less demanding showing is required for the waiver of certain rights. *See* majority op., ¶ 45.

¶ 80. In *Rao,* the right in question was the "Article I, Section 5 right of trial by jury" in the Wisconsin Constitution. *Rao,* 310 Wis. 2d 623, ¶ 22. Article I, Section 5 of the Wisconsin Constitution provides that the right of trial by jury may be waived by the parties in all cases *in the manner prescribed by law.* Section 5 reads in full as follows:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases *in the manner prescribed by law.* Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof. (Emphasis added.)

¶ 81. The question presented in *Rao* was whether the defendant waived the right of trial by jury "in the manner prescribed by law." The court in previous cases had declared that a defendant "has no vested right under art. I, sec. 5 [of the Wisconsin Constitution], to the manner or time in which [the right of trial by jury] may be exercised or waived, since these are merely procedural matters to be determined by law."[13]

¶ 82. The manner in which the Article I, Section 5 right of trial by jury may be waived is governed principally by Wis. Stat. § (Rule) 805.01(3). Section (Rule) 805.01(3) sets forth two ways in which the right of trial by jury may be waived. First, a party's failure to demand a jury trial timely in accordance with § (Rule) 805.01(2) constitutes a waiver of the jury trial right. Second, the parties or their attorneys of record may waive the right by written stipulation filed with the court or by oral stipulation made in open court and entered in the record. A party may also waive the jury trial right by failing to pay the jury fee timely. Wis. Stat. § 814.61(4).

¶ 83. As both Wis. Stat. § (Rule) 805.01(3) and Wis. Stat. § 814.61 make clear, a party's "waiver" of the Article I, Section 5 right of trial by jury need not be a "waiver" in the strict sense of that word, that is, an "intentional relinquishment of a known right." Instead, a party may "waive" the Article I, Section 5 right of trial by jury by failing to assert the right timely (as when a party fails to demand a jury trial timely in accordance with § (Rule) 805.01(2)) or by violating a law setting conditions on the party's exercise of the jury trial right

---

[13] *Phelps v. Physicians Ins. Co. of Wis., Inc.*, 2005 WI 85, ¶ 32, 282 Wis. 2d 69, 698 N.W.2d 643 (quotation marks omitted).

(as when a party fails to pay the jury fee timely in accordance with Wis. Stat. § 814.61). The *Rao* court explained that this form of "waiver" is more akin to "forfeiture" than to "waiver" in the strictest sense of waiver being an intentional relinquishment of a known right.

¶ 84. Thus, *Rao* does not stand for the proposition that some rights subject to a knowing, intelligent, and voluntary waiver may be waived with a less demanding showing than others. It stands simply for the proposition that in accordance with the very text of the Wisconsin Constitution, the right to a jury trial may be relinquished in the manner prescribed by law.

¶ 85. The right in *Rao* was subject to forfeiture, by virtue of the Wisconsin Constitution and the relevant statutes and supreme court rule. Conversely, the statutory right in the present case, as the majority holds, is subject to a waiver, which must be shown to be knowing, intelligent, and voluntary. No such showing has been made in the present case.

¶ 86. We have previously held that "[e]stablishing that a party knew of the right at issue is essential to establishing waiver. . . . Stated differently, a valid waiver that intentionally relinquishes a right must be done with actual knowledge of the right being waived." *Brunton,* 325 Wis. 2d 135, ¶ 36. In the present case, there is nothing in the record to demonstrate that the defendant knew the right existed and, in fact, the defendant argues that he did not know the right existed.

¶ 87. Following the court's reasoning in *Denson,* I would hold that an evidentiary hearing is necessary to determine whether the defendant's waiver of the right to be present at the pronouncement of judgment was knowing, intelligent, and voluntary.

¶ 88. For the reasons set forth, I dissent.

¶ 89. I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.